IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: Nicolaides Fink Thorpe Michaelides Sullivan LLP | Case No. 1:25-cv-5449 |
| CEDARS-SINAI MEDICAL CENTER, a California nonprofit public benefit corporation, <br><br> Plaintiff, <br><br> v. <br><br> AIG SPECIALTY INSURANCE COMPANY, an Illinois corporation, *et al.,* <br><br> Defendants. | Principal case pending in the United States District Court for the Central District of California, Case No. 2:24-cv-02543-PD |

**NON-PARTY NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP'S
MEMORANDUM IN SUPPORT OF ITS
MOTION TO QUASH AND FOR ENTRY OF A PROTECTIVE ORDER**

Nicolaides Fink Thorpe Michaelides Sullivan LLP ("Nicolaides"), a non-party, by and through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), respectfully moves this Court for an Order quashing the subpoena for documents and deposition testimony served on it by Cedars-Sinai Medical Center ("Cedars") in connection with an underlying insurance coverage action pending in California (the "California Litigation") in which Nicolaides is not a party and has no interest, and protecting Nicolaides from Cedars' discovery requests. Nicolaides was retained as outside coverage counsel for one of the defendants in the California Litigation, AIG Specialty Insurance Company ("AIG Specialty"), and later, AIG Specialty's third-party claims administrator, Fortitude Property and Casualty Solutions, Inc. ("FPCS"), for the purpose of providing legal advice.

Cedars filed the California Litigation seeking a declaration of its rights and obligations under a Pollution Legal Liability Policy issued to it by AIG Specialty related to Cedars' alleged losses in connection with the COVID-19 pandemic. Cedars also seeks damages for AIG Specialty's alleged breach of contract and breach of the implied covenant of good faith and fair dealing. Discovery in the California Litigation has been ongoing for over a year, with one final discovery extension up to and including May 30, 2025.

With less than a month remaining in an already extended discovery period, on May 1, 2025, Cedars served Nicolaides with a subpoena seeking documents and deposition testimony—along with subpoenas to Nicolaides partner Matthew Fink, individually, and FPCS—and at the same time issued subpoenas to over 100 other AIG Specialty policyholders. Despite having ample opportunity to obtain any purportedly relevant, non-privileged information from a party to the California Litigation, and having obtained such information from AIG Specialty, Cedars insists on conducting a last-minute fishing expedition to hunt for any information to support its claims. The subpoena is facially invalid because it states no location for compliance, and is unenforceable as it seeks disclosure of privileged information and imposes undue burden on a non-party. Cedars makes no showing that the information it seeks from Nicolaides could not, and has not, been obtained from parties to the California Litigation, or that substantial need exists to enforce the subpoena. For these reasons, Nicolaides requests that the Court grant its Motion to Quash and for a Protective Order.

## BACKGROUND

On May 1, 2025, Cedars served Nicolaides with a subpoena seeking documents and deposition testimony. The subpoena was served on the front desk clerk of Nicolaides' Chicago office in the lobby of the building. The subpoena does not identify a place for compliance and

merely states for the location, "via Remote Video Deposition." *See* Exhibit A, Subpoena. The subpoena is overbroad and unduly burdensome and is directed at obtaining material plainly protected by the attorney-client privilege and work-product doctrine. The subpoena seeks deposition testimony regarding Nicolaides' alleged "claims handling work as outside coverage counsel for AIG or FORTITUDE RE" on *any claims* made by Cedars and two other policyholders not parties to or having an interest in the California Litigation; engagement agreements and invoices for Nicolaides' work as outside coverage counsel for COVID-related claims arising under *any* policy issued by AIG Specialty; guidelines used by Nicolaides regarding claims handling on any claims for which Nicolaides served as coverage counsel; communications between Nicolaides and its clients relating to Cedars' claim; and Nicolaides' "complete claim file" for Cedars' "claims." The subpoena likewise seeks production of documents regarding each of these topics.

On May 3, 2025, counsel for Nicolaides wrote to Cedars' counsel, advising the subpoena is facially invalid and is improper for several reasons and requested that counsel withdraw the subpoena to avoid unnecessary motion practice. *See* Exhibit B, May 3, 2025 E-mail from A. Cassidy to J. Atteberry. On May 7, Cedars' counsel advised that Cedars would not withdraw the subpoena and instead, requested that Nicolaides agree to accept service on behalf of two other subpoena respondents. *See id.*, May 7, 2025 E-mail from J. Atteberry to A. Cassidy.

## LEGAL STANDARD

Rule 45(d) authorizes "the court for the district where compliance is required" to quash or modify a subpoena under certain circumstances. Fed. R. Civ. P. 45(d). A district court must quash or modify a subpoena that (1) fails to allow a reasonable time to comply, (2) requires a person to comply beyond the geographical limits specified in Rule 45(c), (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies, or (4) subjects a person to

undue burden.  *See* Fed. R. Civ. P. 45(d)(3)(A).  A district court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).

The ability to use subpoenas to obtain information from non-parties is not unlimited.  The issuer of "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  Rule 45 instructs courts that they "must protect" non-parties "from significant expense resulting from compliance" with a subpoena.  *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *1 (N.D. Ill. Apr. 22, 2020) (quoting Fed. R. Civ. P. 45(d)(2)(B)(i)&(ii)).  Indeed, courts "should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party."  *Id.* at *2 (citation omitted).  Courts analyzing whether to quash a non-party subpoena under Rule 45(c), "must engage in a balancing process, balancing the burden of compliance against the benefits of the requested production."  *Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005) (citing *Nw. Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)).

A court may also issue a protective order if the non-issuing party demonstrates good cause and explains why it will be subjected to annoyance, embarrassment, oppression, or undue burden or expense if a protective order is not entered. Fed. R. Civ. P. 26(c)(1).

## ARGUMENT

The Court should grant the Motion and quash Cedars' subpoena because the subpoena is facially invalid, it seeks disclosure of information that is plainly privileged, and it imposes undue burden on a non-party without a showing of substantial need for the discovery.  The discovery sought from Nicolaides is wholly improper as Cedars has not exhausted other means of obtaining the discovery and if it has, these requests are duplicative and cumulative of discovery sought and

4

obtained from parties to the litigation. The discovery is not tailored to the claims or defenses at issue in the California Litigation and all of the requests are intended to fish for any potential information in support of Cedars' claim all at the expense and burden of a non-party.

### A. The Subpoena Is Facially Invalid.

As a threshold issue, this Court should quash the subpoena because it is facially invalid as it fails to state the place for compliance. A valid subpoena must list a specific place of compliance, pursuant to Rule 45(a)(1)(A)(iii). *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 710 (N.D. Tex. 2017) (recognizing that "an email address does not qualify as a location or place where compliance is required under Rule 45"); *Russell v. Maman*, No. 18-CV-06691-RS (AGT), 2021 WL 3212646 (N.D. Cal. July 29, 2021) (denying a motion to compel where the subpoena listed the place of compliance as "via Zoom"); *Frobe v. UPMC St. Margaret*, No. 2:20cv00957-CRE, 2021 WL 9628848, at *1 (W.D. Pa. July 13, 2021) ("'Zoom Videoconferencing' is not a 'Place;' rather, it is a method of taking the deposition."). Here, the subpoena merely states the place for compliance is "via Remote Video Deposition." Ex. A. That the deposition would proceed via a remote video deposition only indicates the method for taking the deposition and not a place. Accordingly, the subpoena is invalid on its face and should be quashed for that reason alone.

### B. The Subpoena Requires Disclosure of Privileged or Other Protected Information.

First, Nicolaides is a non-party and has no interest in the California Litigation. Nicolaides did not act as a "claims handler" for AIG Specialty or FPCS. *See* Exhibit C, Declaration of J. Viner, ¶¶ 4-5. Nicolaides is not a fact witness in the California Litigation. Rather, Nicolaides was retained by AIG Specialty and its third-party administrator, FPCS, to provide legal advice. *Id.* at ¶ 4. The materials contained within Nicolaides' files are plainly subject to attorney-client privilege and attorney work product protection. Any non-privileged materials in Nicolaides' files are in the

control of AIG Specialty and we understand would have already been requested and, if appropriate, produced in the California Litigation, leaving only privileged material at issue here.

This Court must quash the subpoena because it seeks disclosure of privileged and other protected information. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *Id.* (citations omitted). Courts regularly quash subpoenas issued to attorneys on the basis of attorney-client privilege and work product protection where the lawyers were hired in their capacity as lawyers to provide legal services, as is the case with Nicolaides. *See Schlicksup v. Caterpillar, Inc.*, 09-CV-1208, 2011 WL 2731323, at *5 (C.D. Ill. July 13, 2011) (granting motion to quash subpoena that sought information regarding outside counsel's investigation of employee complaints on the basis of attorney-client privilege and the work product doctrine); *Jackson v. Parker*, 08 C 1958, 2008 WL 4844747, at *1 (N.D. Ill. Nov. 7, 2008) (granting motion to quash subpoena issued to former lawyers that was impermissibly overbroad as it called for all documents and records relating to the representation of the defendant in an unrelated case).

The subpoena requests Nicolaides' files for its "claims handling work as outside coverage counsel … on any claims by" Cedars and two other non-party policyholders, as well as Nicolaides' engagement agreements and invoices sent to its clients related to COVID-related claims arising under a policy issued by AIG. *See* Ex. A, Topics 1-5; Requests 1-5. Putting aside the breadth of the requests, documents and information contained in outside counsel's files, used for the purpose of providing legal advice, are subject to attorney client privilege and Nicolaides' work product is

6

likewise entitled to work product protection. Cedars' bald assertion that Nicolaides acted in a claims handling capacity is simply incorrect.

Any non-privileged documents or information contained in Nicolaides' files would be equally available to AIG Specialty, a party to the California Litigation. Nicolaides should not be stuck with the burden of parsing through privileged information to obtain the few non-privileged materials that have already been produced to Cedars by AIG Specialty, or could have been produced had Cedars made a timely discovery request. Cedars has not made any showing that it requested the subject information from AIG Specialty or that upon request, AIG Specialty was unable to produce the requested documents. If Cedars contends that AIG Specialty failed to produce the requested records, that is not a sufficient basis to go fishing through a party's lawyer's privileged files. *See Little,* 2020 WL 1939358, at *7 (finding a fundamental difference between arguing a party was "unable to produce the requested documents" and "asserting that [the party] should have produced the requested documents but failed to do so); *Tresona Multimedia, LLC v. Legg,* No. 15 C 4834, 2015 WL 4911093, at *4 (N.D. Ill. Aug. 17, 2015) ("A plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information.").

Indeed, Nicolaides understands that discussions and potentially motion practice are ongoing in the California Litigation regarding whether further production of materials related to these other claims is appropriate. As the discoverability of the other claim-related information that Cedars seeks is currently at issue before the court presiding over the California Litigation, the subpoena to Nicolaides is an improper attempt to circumvent the fact that the California court has not, to date, seen fit to permit that discovery.

Additionally, the subpoena seeks documents and testimony regarding Nicolaides' engagement by its clients and invoices submitted to its clients with respect to COVID-related claims arising under a policy issued by AIG Specialty and any affiliated companies. Ex. A., Topics 4-5; Requests 4-5. Engagement letters or agreements and invoices contain confidential and proprietary information. Nicolaides is not counsel of record for any party to the California Litigation. AIG Specialty is represented by a competitor law firm, and there is no basis for Cedars to subject a non-party to discovery that requires disclosure of competitive, confidential and proprietary information to its industry competitors. Invoices also contain information protected by the attorney-client privilege and work product doctrine, as billing entries reveal the nature and substance of legal advice sought and provided to Nicolaides' clients, as well as counsel's mental impressions regarding the engagement. *See, e.g., Real v. Continental Group, Inc.,* 116 F.R.D. 211, 213-14 (N.D. Cal. 1986) ("The attorney-client privilege embraces attorney time, records, and statements to the extent that they reveal litigation strategy and the nature of the services provided"); *In re Grand Jury Witness,* 695 F.2d 359, 362 (9th Cir. 1982) (the attorney-client privilege protects correspondence between attorney and client and time records describing the services performed that reveal the client's motivation for creating the relationship or possible litigation strategy). Furthermore, the subpoena seeks any guidelines, requirements, standard or procedures used by Nicolaides regarding how to handle any claims for which Nicolaides served as coverage counsel. Ex. A, Topic 7; Request 7. Aside from being offensively overbroad as drafted, there are no such guidelines because Nicolaides did not act as a "claims handler" on behalf of AIG Specialty. *See* Ex. C, ¶¶ 5, 8.

Furthermore, Cedars' requests for documents relating to other policyholders' claims are improper as they seek confidential information of other third parties. The information provided

by other policyholders to substantiate a claim for COVID-related losses would contain confidential and proprietary information of the other policyholder and should not be subject to discovery through a non-party subpoena issued to an insurance company's outside counsel who were engaged to provide legal advice. Other policyholder information may also be subject to other applicable privileges, including the insurer-insured privilege. *See, e.g., Olkolski v. Pt Inatai Golden Furniture Indus.*, No. 4:06-CV-4083 WDS, 2008 WL 4449534, at *2 (S.D. Ill. Sept. 29, 2008) (citing *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15, 17–18 (Ill. 1964) (finding confidential communications between an insured and an insurer protected by attorney-client privilege). Also, various states' laws, such as Illinois, prohibit disclosure of third-party insurance information. *See e.g.,* 735 ILCS 5/2-1003(e). Public policy demands that such information be kept private and confidential, especially where, as here, neither Nicolaides nor the other policyholders are parties to the California Litigation.

Moreover, this Court should not permit an opposing party to dig through counsel's files at the mere suggestion of potential relevance. It would not only be an inconvenient and burdensome exercise to subject Nicolaides to this type of discovery, but also would have a chilling effect and undermine the purpose of the attorney-client privilege, and would far exceed the boundaries of discovery under Rule 26. *See Leksi, Inc. v. Federal Ins. Co.,* 129 F.R.D. 99, 106 (D.N.J. 1989) ("[t]o compel the production of the files of other insureds not only involves enormous inconvenience and management difficulties, but also entails a frightening potential for spawning unbearable side litigation, which, in [the court's] view defeats the purpose and spirit of the discovery rules themselves").

Simply put, Cedars has not and cannot establish that the information it seeks cannot be obtained through other means, namely through a party during the course of discovery in the

California Litigation. Cedars cannot demonstrate that its need for the requested information outweighs the inherent risks involved in producing a non-party's privileged or otherwise confidential materials.

### C. The Subpoena Imposes An Undue Burden On A Non-Party.

This court must quash the subpoena because it imposes an undue burden on a non-party to the California Litigation. Courts in this district routinely quash subpoenas issued to non-parties where responding to the subpoena would subject the non-party to undue burden, even if the non-party may have some relevant discovery. *See, e.g., Little,* 2020 WL 1939358 (quashing subpoena that imposed undue burden on non-party and could have been obtained through a party to the litigation); *Am. Soc. of Media Photographers, Inc. v. Google, Inc.,* No. 13 C 408, 2013 WL 1883204 (N.D. Ill. May 6, 2013) (quashing subpoena that imposed an undue hardship on non-party); *Nw. Mem. Hosp.*, 362 F.3d at 927 (affirming motion to quash subpoena to non-party because it was unduly burdensome); *Patterson*, 2005 WL 43240, at *3-5 (same); *In re Heartland Inst.,* No. 11 C 2240, 2011 WL 1839482, at *3-4 (N.D. Ill. May 13, 2011) (quashing subpoena where there was no "compelling need" and it "would impose undue burden").

Non-party status is a "significant factor" to be considered in determining whether a subpoena imposes undue burden. *Little,* 2020 WL 1939358, at *2 (citations omitted). Additionally, courts consider whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party. *Id.* (citing *Google,* 2013 WL 1883204, at *2). Further, a court may limit discovery pursuant to Rule 26(b)(2)(c) if it determines that the requested documents can be

obtained from a more convenient or less burdensome source, the requesting party had ample opportunity to obtain the information through the normal discovery process, or the information sought is cumulative or duplicative of other discovery. *Id.* (citing *Earthy, LLC v. BB&HC, LLC*, No. 16 C 4934, 2017 WL 4512761, at *3 (N.D. Ill. Oct. 10, 2017)).

The subpoena is overly broad and unduly burdensome, as it is not limited in scope or time and seeks information that has little to no relevance to the claims or defenses at issue in the California Litigation. For example, the subpoena requests documents and testimony regarding Nicolaides' alleged "claims handling work as outside counsel" for its clients "on any coverage claim" made by Cedars and two other policyholders. *See* Ex. A, Topics 1-3; Requests 1-3. As drafted, these requests are limitless—there is no temporal limitation, no limitation to claims made under certain policies issued by specific paper companies, and no limitation to COVID-related claims similar to Cedars' claim which is the subject of the California Litigation. Similarly, other requests seek engagement agreements or invoices related to Nicolaides' work as outside counsel "for COVID-related claims arising under a policy issued by AIG." *Id.* at Topics 4-6; Requests 4-6. "AIG" is so broadly defined it includes every AIG-affiliated entity and there is no limitation to policies with substantially similar coverages as that provided to Cedars.

Additionally, the subpoena seeks information regarding Cedars' claim that is equally available to Cedars and within the possession, custody or control of AIG Specialty—a party to the California Litigation in the best position to respond to such discovery requests. *See* Ex. A, Topics 8-9; Requests 8-9. Cedars has engaged in discovery in the California Litigation for over a year. The court permitted Cedars additional time to conduct limited discovery until May 30, 2025. After obtaining information from AIG Specialty, Cedars apparently now looks to AIG Specialty's former attorneys to fill in perceived gaps in AIG Specialty's production or discovery responses.

This type of fishing expedition should not be permitted. *See U.S. v. Segal,* 276 F. Supp. 2d 896 (N.D. Ill. 2003) (granting motion to quash out of concern issuer was attempting to embark on a prohibited fishing expedition); *Cohn v. Taco Bell Corp.*, No. 92 C 5852, *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1993 WL 451463, at *4-5 (N.D. Ill. Nov. 1, 1993) (quashing subpoena where the third-party witness "would not seem to be able to add anything to the information" which can be obtained from other sources).

Even if Cedars could establish the requested material is relevant to the California Litigation, possible relevance is not enough. Nonparties "are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson,* 2005 WL 43240 at *1. This Court should avoid the slippery slope of requiring compliance with a subpoena based on a mere showing of possible relevance, especially where the subpoena is issued to a party's former outside counsel and the client has not waived the privilege. *See Google,* 2013 WL 1883204, at *5 (refusing to force compliance with a subpoena merely based on a showing of possible relevance, noting this slippery slope is not one the court intended to traverse down).

Moreover, Cedars has already noticed more than the ten depositions per side permitted under Rule 30(a)(2)(A)(i). Nicolaides has no information that Cedars sought leave to take more than ten depositions in the California Litigation or reached an agreement with those parties to exceed the permissible number of depositions. Cedars' subpoena for Nicolaides' deposition should be quashed for this additional reason. *See Cage v. Harper*, 17-CV-7621, 2019 WL 11705571, at *2 (N.D. Ill. Nov. 1, 2019) (quashing subpoena to an attorney because Plaintiff failed to seek leave from the court to take more than ten depositions). The California court re-opened discovery many months ago and set the final discovery deadline to May 30, 2025. Cedars waited

until May 1 to serve subpoenas on over 100 non-parties including Nicolaides, and demands production of responsive documents and a Nicolaides representative witness to be prepared and presented for deposition within 20 days. The time for compliance with the subpoena is unreasonable. Nicolaides is unable to scour its files for all responsive information; review for privileged or confidential information; produce the materials; and prepare and present a witness to testify by May 20, 2025. Requiring compliance would cause Nicolaides undue burden in the form of employee time and attention, significant attorneys' costs and fees, and document and e-discovery vendor costs. Nicolaides, a non-party, should not be faced with the time pressure, burden, and expense of this discovery as a result of Cedars' failure to secure the requested materials through a party to the litigation in a timely fashion. At minimum, if this Court is inclined to permit such discovery, Nicolaides requests that Cedars be ordered to pay all costs and expenses incurred in complying with its subpoena pursuant to Rule 45(d)(2)(B)(ii).

## CONCLUSION

For all the reasons stated above, Nicolaides respectfully requests that this Court enter an Order quashing the subpoena calling for Nicolaides to produce documents and a representative witness for deposition, and entering a protective order prohibiting Cedars from seeking discovery from Nicolaides in relation to the California Litigation. In the alternative and at a minimum, Nicolaides requests that the Court award it the fees and costs of compliance with the subpoena. Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), Nicolaides requests that this Court award it reasonable attorneys' fees and expenses incurred in connection with this Motion.

Dated: May 15, 2025                      Respectfully submitted,

NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP

By:  _/s/ Amy J. Collins Cassidy_____
     Amy J. Collins Cassidy (6274727)
     Stephanie M. Flowers (6329686)
     Nicolaides Fink Thorpe Michaelides Sullivan LLP
     10 S. Wacker Street, Suite 3600
     Chicago, IL 60606
     (312) 585-1400
     acassidy@nicolaidesllp.com
     sflowers@nicolaidesllp.com